## ZINK *v.* ZINK

[No. 105, September Term, 1957.]

*Decided December 23, 1957.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John J. O'Connor, Jr.,* for the appellant.

*Marvin Braiterman* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The husband appeals from a decree that granted his wife a divorce *a vinculo* and adopted a settlement between the parties as to alimony and property rights.

The husband's claim is that there was not sufficient corroboration of his wife's testimony to justify the awarding of the divorce. The parties were married in 1933. No children were born of the marriage. The wife charged that the husband had abandoned her for the statutory period by refusing and continuing to refuse marital cohabitation. A second allegation was that in 1946 or 1947 the husband committed adultery and that, subsequently, the wife "condoned and conditionally forgave" him for his misconduct upon his representation and promise that he would thereafter fulfill all of his marital obligations, but that he has failed to do so and, instead, deserted and abandoned her, as first charged, thereby reviving the adultery. The husband denied the desertion.

He admitted the adultery but denied that the condonation was conditional, saying that his wife forgave him absolutely.

The record in the case shows that as the trial was about to begin, the court ordered a recess and after discussion between counsel and their clients (counsel for the husband on appeal did not represent him below), the matter went to trial on the sole question of desertion. The wife testified, and produced a niece as a corroborating witness. No other testimony was offered by the wife, and the husband made no objection to the testimony and did not cross-examine the witnesses nor himself offer any evidence. At the conclusion of the testimony, a stipulation, which apparently had been agreed upon that morning, was read into the record as to the amount of alimony the husband was to pay and the disposition of the bank and building association accounts and real estate belonging to the couple.

The wife's testimony was that beginning in 1950 the husband had told her that he was tired of her, had no more feeling for her, and that since then he had continuously refused to have sexual relations despite her efforts to woo him. She said that they had continued to occupy the same bedroom until December, 1955, when, discouraged by five years of consistent rebuffs, she began to sleep in a separate bedroom. Her niece testified that she knew the couple were not getting along because "my aunt told me". She said that her aunt told her that they had not been "man and wife since 1950". She was asked whether the husband was present when her aunt told her that they were not living together as man and wife, and her answer was simply "Yes". She said that she thought that her aunt tried "everything" to effect reconciliation with the husband. She testified further that since 1955 she knew that the couple had occupied separate bedrooms because she had helped her aunt to make up the beds.

The chancellor found that the wife's testimony that the parties occupied separate sleeping quarters and did not live together as man and wife had been corroborated and that she was entitled to a divorce *a vinculo*.

We find ourselves unable to agree with the chancellor. Of course, permanent and irrevocable refusal, without justifica-

tion, of one spouse to have marital relations with the other constitutes abandonment, but there must be corroboration of the essential elements of such an abandonment. It is true that it has often been stated by this Court that in a contested case, slight corroboration is sufficient if the facts preclude the possibility of collusion. *Hodges v. Hodges,* 213 Md. 322, 325. The record here scarcely permits any inference other than that during the recess at the beginning of the trial, agreement was reached that if the evidence was limited to the matter of desertion and the question of adultery not gone into, and the settlement as to alimony and property rights was made part of the decree, the husband would not offer any contest. This being so, the case must be treated as one where there is possibility of collusion and the degree of corroboration required must rise proportionately. *Kelsey v. Kelsey,* 186 Md. 324, 328.

The niece's testimony that the wife had told her, out of the husband's presence, that the couple had not been living together as man and wife since 1950 was hearsay and would not have been admissible over objection. *Misner v. Misner,* 211 Md. 398, 404. In *Bowersox v. Bowersox,* 157 Md. 476, it was held that in an uncontested case where there was the possibility of collusion, hearsay testimony, although not objected to, could not be received as sufficient corroboration, although it was noted that in contested divorce litigation, evidence admitted without objection, if it has any probative force, may be accepted for what it is worth. In the case before us we think the echoing by the niece of the self-serving statements of her aunt as to the existence of the grounds the aunt relies on to obtain the divorce had not sufficient probative force or worth standing alone to serve as corroboration. Of probative value, because inherently more reliable and convincing, was the testimony of the physicians in *Kelsey v. Kelsey,* 186 Md. 324, *supra,* and *Brennecke v. Brennecke,* 213 Md. 447, whose professional questions as to the cause of the wives' physical deterioration were answered by statements as to the sexual desertion by the husband. That the couple for a time occupied separate bedrooms is, of itself, not decisive. *Mower v. Mower,* 209 Md. 413. In any event this

had been so for only a few months before the trial, not eighteen months.

The chancellor seemingly relied most on the niece's statement that the husband had been present on occasions when the aunt had told her that they were not living together as man and wife, treating this as an admission by the husband of the truth of the statement. It has been held that in a contested case, where the possibility of collusion is slight, evidence of corroboration may be found in the admission of the other spouse. *Brennecke v. Brennecke, supra; Cullotta v. Cullotta,* 193 Md. 374, 382; *Maranto v. Maranto,* 192 Md. 214, 217. Where a party to an action adopts a statement uttered by another, it becomes his own admission. In some situations standing mute may constitute the adoption of the statement of another person. This can be only when no other explanation is equally consistent with silence—*i. e.,* if the situation and circumstances are such that a dissent in ordinary experience would have been expressed if the statement or communication had not been correct. 4 *Wigmore, Evidence* (3d ed.), Secs. 1069 and 1071. *McCormick, Evidence,* Sec. 247, at 528, 530, discusses the rule and says: "If a statement is made by another person in the presence of a party to the action, containing assertions of facts which, if untrue, the party would under all the circumstances naturally be expected to deny, his failure to speak is circumstantial evidence that he believes the statements to be true and his conduct is thus receivable against him as an admission of such belief." He points out that a failure to deny may be more naturally explainable on some inference other than that of belief in the truth of the inference and that the evidence is then to be excluded. If an admission by silence is to be received against the silent party, it must be found (1) that the statement was actually made; (2) that the reaction of silence or evasion took place as claimed; (3) that the party heard and understood the statement; and (4) that under all the circumstances the party's conduct makes it probable that he believed the statement to be true.

We note that the niece testified only that the statement had been made in the husband's presence, not that he heard

or understood it, and, more important, not that he did not deny it. If it be assumed that there was enough in the testimony to justify an inference by the chancellor that the husband stood mute, we do not think the subject matter of the conversation and the environment were such as to justify an inference that the husband admitted the statement to be true. Husbands and wives do not naturally and customarily discuss intimate problems or difficulties with outsiders, and it is more unlikely than likely that a husband would debate with his wife in the presence of a third person the details of their intimate life. We think the testimony of the complainant failed to show an admission by the husband as to the fact of desertion. Cf. *Kelly v. State,* 151 Md. 87, 95, 97.

At the argument the appellee suggested that, if we did not agree with the chancellor, the case be remanded for a hearing on the questions of adultery and condonation. At the conclusion of the testimony, appellee's counsel, when asked if he had anything further, answered that there was the count of the amended bill as to adultery but that they did not want to prove it unless it was necessary. At that point the chancellor said he found sufficient corroboration of desertion by the husband. Under the circumstances, we feel that the case should be remanded for decisions on the wife's charge of adultery and on whether her condonation was conditional in fact and in law.

> *Case remanded without affirmance or reversal for further proceedings not inconsistent with this opinion, the appellant to pay the costs.*

HENDERSON, J., filed the following dissenting opinion.

I do not agree with the decision in this case, either on the law or the facts, and think it may be worthwhile to state my views. The opinion discards the testimony of the niece as to statements made by the wife out of the husband's presence as being without probative force, although it came in without objection, on the ground that it was hearsay. This seems

to me to be contrary to the accepted rule that evidence admitted without objection is legally acceptable. Cf. *Weil v. Free State Oil Co. of Md.,* 200 Md. 62, 70, and *Sentman v. Gamble,* 69 Md. 293, 305. In *Bowersox v. Bowersox,* 157 Md. 476, the case was uncontested and based wholly upon testimony taken before an examiner; in *Misner v. Misner,* 211 Md. 398, the testimony of a witness as to what she "understood" as to the relations of the parties, from an undisclosed source, was held to be properly excluded, over objection. In neither case was there any other corroborative evidence. Indeed, there was cogent evidence to the contrary. On the other hand, statements made to an attending physician have been held to be admissible, and relied on as corroborative. *Kelsey v. Kelsey,* 186 Md. 324; *Brennecke v. Brennecke,* 213 Md. 447. Once evidence of this kind is admitted in a trial before a chancellor who sees and hears the witnesses, it seems to me that its weight is for the trier of facts. If we are to weigh the evidence, I think a statement made to a confidant and close relative at a time when the constructive desertion was taking place, and long before any litigation was pending or in contemplation, should be entitled to at least some consideration.

But there was further corroborative evidence in the instant case. The niece testified that the husband was present on at least one occasion when the wife charged him with constructive desertion, and the fact that he stood mute may be considered as an admission. The opinion recognizes the rule but finds it unlikely that a husband would feel called upon to deny the charge. I think that is an unwarranted assumption. Not only do I think the trial court properly drew the inference that he acquiesced in the charge, but it is shown that he admitted the fact of a cessation of marital relations in his answer, although he denied that it was his fault. Moreover, he did not take the stand to deny the sworn testimony of the wife and the niece. Another corroborative circumstance is the fact that in his answer he admitted the charge in the amended bill that he had committed adultery previous to the alleged constructive desertion, although he alleged that it was condoned unconditionally. If true, the fact of adultery

would tend to show a disinclination toward his wife, and a disregard of marital obligations. Cf. *Scheinin v. Scheinin,* 200 Md. 282, 292. There is also corroborative testimony that the wife moved into another room when she found that her repeated efforts to resume the marital intercourse were repulsed. From the evidential point of view, I think there was enough testimony to corroborate the wife's version of the desertion.

We have repeatedly held that corroboration may be slight in a contested case, and that it need not go to every detail. Apparently the opinion in the instant case would impose a higher standard of proof, on the ground that the husband did not take the stand, and that the case was in fact uncontested. I think this is an unwarranted assumption. The fact that there was an agreement at or during the trial as to the amount of alimony is not significant or unusual, and is overbalanced by the fact that he took an appeal from the decree. So far from inferring that his failure to testify was collusive, I would simply draw the inference that he thought he would have a better chance of reversal by standing on the weakness of the plaintiff's case than the strength of his own. If he had taken the stand and denied the charge, and the Chancellor had disbelieved him, I assume that this Court would have applied a different standard of proof, simply because of the contest.

I think the instant case is stronger than *Kelsey v. Kelsey, supra,* where we reversed the chancellor's finding. If evidence like that in the instant case has no probative value, I think the ground of constructive desertion is virtually deleted from the statute, since the offense can only be proved by the testimony of the injured party and such corroborative circumstances, including statements and admissions of the parties, as may come to the attention of third parties. Cf. *Lent v. Lent,* 202 Md. 240, 244. The weight of such circumstances may be safely left to the sound discretion of the Chancellor.

The remand in the instant case poses other questions. If the wife is able to prove adultery on the part of the husband, by evidence other than his admission of record, I should suppose that her resumption of marital relations after knowledge

206

of the offense would amount to condonation in law, and that it would be unnecessary to prove a condition in fact. In *Cullotta v. Cullotta,* 193 Md. 374, 383, it was said that "Condonation is, of course, forgiveness with an implied condition that the marital offenses shall not be repeated and that the party offended shall be treated with conjugal kindness and on breach of this condition, the right to remedy for former injuries revives" (citing cases). But the only breach of condition alleged is constructive desertion, proof of which was found lacking in the present appeal. While it is true that the Chancellor's decision rendered proof of adultery unnecessary, counsel for the wife did not suggest that she had any additional testimony on the vital point of constructive desertion relied on to revive the former offense. It is not clear to me whether this Court takes the view that proof of a breach of the implied condition requires less corroboration than proof of the same fact as a ground for divorce, or whether the case is remanded to permit a retrial of the same issue, with the vague hope that other and further evidence may in some way be produced. In either event, I should have preferred to affirm the Chancellor's decree.