494 A.2d 235

**Phillip Alonzo DUNCAN**

v.

**STATE of Maryland.**

**No. 777, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

July 3, 1985.

**46**

**48**

Mark Colvin, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Stephanie J. Lane, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, and Richard D. Warren, State's Atty., Wicomico County, Salisbury, on brief), for appellee.

Submitted before GILBERT, C.J., and GARRITY and BLOOM, JJ.

BLOOM, Judge.

Appellant, Phillip Alonzo Duncan, was convicted at a bench trial in the Circuit Court for Wicomico County of both child abuse and second degree sexual offense. He received a seven year sentence for the sexual offense and a concurrent three year sentence for child abuse.

In this appeal Duncan asserts:

1. The trial court erred in admitting testimony concerning a statement made by appellant's son and appellant's response thereto.

2. The evidence was insufficient to sustain the convictions.

3. The conviction for second degree sexual offense merged into the conviction for child abuse.

4. The trial court lacked jurisdiction to try him for second degree sexual offense because the criminal information failed to charge that offense.

We disagree with appellant's first contention but, since we agree with the second, we will reverse the convictions. It will not be necessary to address the remaining issues.

### The evidence

Appellant was charged with sexually abusing his five-year-old son. The child's mother and appellant's former wife, Lorraine Duncan, testified that on November 11, 1983, appellant visited her and their son at her home while on leave from Dover Air Force Base. While they were all watching television, the boy whispered something to Mrs. Duncan. She asked the child to repeat it first to her, then to his father. After stating that appellant neither admitted nor denied what the boy then repeated aloud, Mrs. Duncan was permitted to testify, over a general objection, that the child told appellant, "Daddy, I told Mommy that you sucked my tweenie" (meaning his penis). She then testified that she turned to appellant and asked him, "Phillip, is that true?" and appellant said, "Son, you better be sure because this is serious." Mrs. Duncan next related that when she repeated her question to appellant he did not respond, whereupon she ordered him out of her home. At that point in the proceedings, defense counsel renewed his objection and moved to strike the testimony as to the child's statement on the sole ground that it had not been disclosed in response to his motion for discovery. The motion was denied. On cross-examination, however, Mrs. Duncan acknowledged that when she asked appellant if what the child said was true,

He laughed it off and he said, "No, Phillip, tell mom the truth." He said something to the effect that this is serious.

John Altvater, a former Maryland State Police trooper, testified that he arrested appellant and questioned him at the state police barracks. He said that appellant, after initially denying the accusation, eventually gave a written statement in which he admitted sucking the child's penis for "a couple seconds." Altvater also testified that Mrs. Duncan told him that when he was confronted with the child's allegation appellant denied it.

Appellant testified that Mrs. Duncan left the boy with him one Saturday in July 1983. After he gave his son a bath, the two of them began playing. The child told his father he loved him, to which appellant replied, "I love you so much I can eat you up" and started kissing the boy "all over," accidentally kissing his son's penis two or three times. When confronted by his former wife, he denied the allegation. Appellant admitted making his written statement to Trooper Altvater but explained that when he said he sucked the child's penis he was attempting a sarcastic response to the trooper's assertion that "kissing him all over" was the same thing as "sucking his penis."

Appellant produced several character witnesses who testified that he had a good reputation for honesty and veracity.

### I. *The child's accusation*

Mrs. Duncan's testimony both as to what her son said to her and to appellant in her home on November 11, 1983, and as to appellant's response was, of course, hearsay. The question is whether it comes within an exception to the hearsay rule as a tacit admission or admission by silence.

The admission by silence exception to the hearsay rule was succinctly explained in *Ewell v. State*, 228 Md. 615, 618, 180 A.2d 857 (1962):

It is generally held that if a statement is made by another person in the presence of a party to the action, be it civil or criminal, containing assertions of facts which if untrue the party would under all the circumstances naturally be expected to deny, his failure to speak is circumstantial evidence that he believes the statements to be

true, and his conduct is thus receivable against him as an admission of such belief. *Kelly v. State,* 151 Md. 87 [133 A. 899]; *Wolfe v. Brown,* 173 Md. 103 [194 A. 832]; *Barber v. State,* 191 Md. 555 [62 A.2d 616]; *Zink v. Zink,* 215 Md. 197 [137 A.2d 139]. See also 2 *Jones on Evidence* (5th ed.), Sec. 388; *McCormick, Evidence,* Sec. 247; 2 *Underhill's Criminal Evidence* (5th ed.), Secs. 378–380; 2 *Wharton's Criminal Evidence* (12th ed.), Sec. 405; 4 *Wigmore, Evidence* (3d ed.), Sec. 1071.

■■■ Who made the statement is immaterial; the significant fact is the conduct of the accused in the face of the accusation. Under some circumstances, failure to deny the charge may permit an inference of guilt. *Barber v. State,* 191 Md. 555, 564–65, 62 A.2d 616 (1948). Standing mute may be evidence of acquiescence in a statement made by someone else only if the situation and circumstances are such that one would ordinarily dissent if the statement were false. *Zink v. Zink,* 215 Md. 197, 202, 137 A.2d 139 (1957). "If an admission by silence is to be received against the silent party, it must be found (1) that the statement was actually made; (2) that the reaction of silence or evasion took place as claimed; (3) that the party heard and understood the statement; and (4) that under all the circumstances the party's conduct makes it probable that he believed the statement to be true." *Id.* If the proffered evidence meets this test, then both the accusatory statement and the resulting conduct are admissible. The statement, however, "is not offered as proof of its contents but rather to show what the party acquiesced in...." McCormick, *Evidence* § 270, at 800 (3d ed. 1984).[1]

■■ Appellant argues that his response, "No, Phillip, tell mom the truth," was a sufficient denial to preclude any inference that he acquiesced in the child's statement or tacitly acknowledged it to be true. Whatever merit there

---

**1.** To be admissible as substantive proof of its contents, the accusatory statement must itself satisfy an exception to the hearsay rule.

may be in that argument, we do not reach it here because the issue was not properly preserved for appellate review.

Appellant made a general objection to his former wife being permitted to testify as to what her son repeated to appellant, and the court overruled the objection. As of the time of that ruling, however, the evidence before the court was that the child had made a statement to appellant which was neither expressly admitted nor denied by appellant. Insofar as that statement accused appellant of any wrongful conduct, the circumstances were such that appellant would be expected to deny it if it were not true. He was in the privacy of a home and in the company only of his son and his former wife. There was nothing to put appellant in fear or to inhibit his speaking. *See Ewell v. State, supra,* 228 Md. at 620, 180 A.2d 857. Consequently, on the basis of the evidence then before him, the trial judge committed no error in admitting the testimony as an admission by silence.

It was not until after the evidence had been admitted that Mrs. Duncan acknowledged that appellant had made a response which could be deemed a denial of the accusation. It would then have been appropriate for appellant to renew his objection and move to strike the testimony, but he failed to do so. Indeed, he had earlier renewed his objection and moved to strike the statement, but only on the ground that he had not been informed of it in response to a discovery motion. By specifying one ground for his objection and motion to strike, he waived all other grounds. *von Lusch v. State,* 279 Md. 255, 261, 368 A.2d 468 (1977).

■ When we determine whether the trial judge committed an error in admitting or rejecting evidence or in striking out or refusing to strike out evidence previously admitted, we do so on the basis of the record as of the time the ruling was made, not on the basis of facts later developed.

## II. *Sufficiency of the evidence*

■ Appellant's contention that the evidence was insufficient to sustain his convictions is based entirely upon the

well-established rule that a defendant's extrajudicial confession standing alone is, as a matter of law, insufficient to support a criminal conviction. To warrant a conviction, the confession must be accompanied by some independent evidence of the *corpus delicti. Bagley v. State,* 232 Md. 86, 192 A.2d 53 (1963); *Wood v. State,* 192 Md. 643, 65 A.2d 316 (1949); *Lemons v. State,* 49 Md.App. 467, 433 A.2d 1179 (1981); *Franklin v. State,* 8 Md.App. 134, 258 A.2d 767 (1969).

■ Although the rule is often stated that a confession must be "corroborated," that word may be misleading. An extrajudicial confession of guilt by a person accused of crime, unsupported by other evidence, is not sufficient to warrant a conviction. The extrajudicial confession "must be supported by evidence independent of the confession, which relates to and tends to establish the *corpus delicti,* i.e., facts that are necessary to show that a crime has been committed." *Bradbury v. State,* 233 Md. 421, 424, 197 A.2d 126 (1964). As Judge Learned Hand expressed it, in *Daeche v. United States,* 250 F. 566, 571 (2d Cir.1918), "The corroboration must touch the corpus delicti in the sense of the injury against whose occurrence the law is directed...." Evidence that may tend to fortify the confession without relation to the *corpus delicti* will not be deemed "corroborative." *Lemons v. State, supra,* 49 Md.App. at 472, 433 A.2d 1179.

■ It is not necessary that the corroborative evidence be full and complete or that it establish the truth of the *corpus delicti* beyond a reasonable doubt or even by a preponderance of proof. *Cooper v. State,* 220 Md. 183, 190, 152 A.2d 120 (1959). Even a slight amount of evidence may be sufficient, *Bradbury v. State, supra,* the necessary quantum being dependent upon the facts of the particular case. *Cooper, supra,* at 191, 152 A.2d 120. "Corroboration" evidence of the *corpus delicti* is sufficient "if, when considered in connection with the confession, it satisfies the jury beyond a reasonable doubt that the offense was com-

mitted and that the defendant committed it." *Jones v. State*, 188 Md. 263, 271–72, 52 A.2d 484 (1947).

The State argues that the child's extrajudicial accusatory statement, put into evidence through the testimony of Mrs. Duncan, together with appellant's confession of guilt to the police fully established the *corpus delicti*. We must reject that argument. In the first place, Mrs. Duncan's testimony as to her son's statement, admissible only in conjunction with appellant's response thereto as an implied admission, is not substantive evidence of the fact asserted by the child. *Ewell v. State, supra*, 228 Md. at 619, 180 A.2d 857. It is the appellant's response to that statement—the tacit admission of its truth—that is the admission of guilt.

Secondly, in order to constitute "corroboration," evidence relating to the *corpus delicti* must also be independent of the confession. One part of a confession simply cannot be used to corroborate another part, even with respect to the *corpus delicti*; a confession "cannot fortify its own truth." *Lemons v. State, supra*, 49 Md.App. at 473, 433 A.2d 1179. Thirdly, multiple confessions by an accused cannot corroborate each other. *Id.*

In this case there is nothing outside the confession to the police and such admission of guilt as may be inferred by appellant's conduct in response to the child's accusation that could in any way be described as independent evidence relating to or tending to establish the existence of the *corpus delicti*. No matter how convinced the trier of fact may be of the truth of appellant's confession, the lack of independent corroborative evidence that the crimes to which appellant confessed actually occurred mandates reversal of his convictions for insufficiency of evidence to support them.

JUDGMENTS REVERSED.

COSTS TO BE PAID BY WICOMICO COUNTY.